**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Civil Action No. 26-cv-4062-WJM

JOSE MATUTE-BARAHONA,

Petitioner,

v.

DAVID VENTURELLA, in his official capacity as
Acting Director of Immigration & Customs Enforcement, *et al*.

Respondents.

---

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

---

Before the Court is Petitioner Isaac Matute-Barahona's Petition for Writ of Habeas Corpus, brought pursuant to 28 U.S.C. § 2241 ("Petition"). (ECF No. 1.) Respondents David Venturella, in his official capacity as Acting Director of Immigration & Customs Enforcement ("ICE"); George Valdez, in his official capacity as Acting Field Office Director for ICE's Denver Field Office; Markwayne Mullin, in his official capacity as Secretary of U.S. Department of Homeland Security ("DHS"); DHS; Todd Blanche, in his official capacity as Attorney General of the United States; the Executive Office for Immigration Review; and Juan Baltazar, in his official capacity as Warden of the Denver Contract Detention Facility ("DCDF") (collectively, "Respondents" or "the Government") filed a cursory response. (ECF No. 11.) For the following reasons, the Petition is granted.

## I. BACKGROUND[1]

Matute-Barahona is a citizen of Honduras. (ECF No. 1 at 4.) He entered the United States in 1995 and has lived there since. (*Id.*) He lives with his wife and four U.S. citizen children. (*Id.*) On November 17, 2025, while on his way to work, Matute-Barahona was detained by ICE in Miami, Florida. (*Id.* at 2, 4.) According to Petitioner, before being detained, he "was not provided a warrant for his arrest, nor did Respondents conduct an individualized determination that []he would be likely to escape before a warrant could be obtained for his arrest. (*Id.* at 4.) Respondents contend they had an administrative warrant for Matute-Barahona's arrest. (ECF No. 10-1.)

Matute-Barahona challenges the legality of his detention and asks the Court to order his immediate release from custody. (ECF No. 1 at 8.)

## II. LEGAL STANDARD

"Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004). More specifically, 28 U.S.C. § 2241 "confers jurisdiction upon the federal courts to hear [such cases." *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) (citing 28 U.S.C. § 2241(c)(3) (authorizing any person to claim in federal court that they are being held "in custody in violation of the Constitution or laws . . . of the United States")). "The fundamental purpose of a § 2241 habeas proceeding is the same as that of § 2254 habeas and § 2255 proceedings: they are an 'attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal

[1] All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

custody.'" *McIntosh v. U.S. Parole Com'n*, 115 F.3d 809, 811 (10th Cir. 1997) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973)).

## III. ANALYSIS

Matute-Barahona contends that his detention is unlawful and violates the Administrative Procedure Act, specifically 5 U.S.C. § 706(2), (Count I) and his Fifth Amendment Due Process rights (Count II). (ECF No. 1 at 7–8.)

The Court need only reach Count II to resolve the Petition. The Court also notes that Matute-Barahona has asserted no statutory claim under the Immigration and Nationality Act, 8 U.S.C. § 1101 *et seq.*, in this action.

### A. Fifth Amendment Due Process Claim

Matute-Barahona argues that his "warrantless arrest without a particularized finding of flight risk violates his Due process rights." (ECF No. 1 at 8.) The Court need not reach the question of the validity or existence of an administrative warrant, and agrees with Matute-Barahona that the lack of a particularized finding of flight risk violates his Fifth Amendment due process rights.

"It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Santillan Quiroz v. Mullin*, 180 F.4th 1226, 1250 (10th Cir. 2026) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)).

The Tenth Circuit recently explained:

> The Due Process Clause of the Constitution forbids the Government from "depriv[ing]" any "person . . . of life, liberty, or property, without due process of law." U.S. Const. amend. V. "Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty that [this] Clause protects." *Zadvydas*, 533 U.S. at 690. Due process requires that, whenever the Government detains somebody, it must have a

> good reason for doing so. *Id*. If the detention is civil and nonpunitive, like the immigration detention here, that reason must rise to the level of a "strong special justification." *Id.*

*Id.* at 1249.

Here, Matute-Barahona contends—and the Court agrees—that Respondents have circumvented their constitutional obligation to justify his detention with a "strong special justification." Indeed, Respondents have provided *no* justification for Matute-Barahona's continued detention. By the same token, Respondents have failed to adhere to the prescribed regulatory and statutory procedures for demonstrating Matute-Barahona's detention is justified. *See also Garcia Abanil v. Baltazar*, 817 F. Supp. 3d 1148, 1158 (D. Colo. 2026) (concluding failure to provide individualized bond hearing prescribed by 8 U.S.C. § 1226 necessarily violated petitioner's due process rights).

Matute-Barahona also argues that Respondents arrest of him "without a particularized determination about his risk of flight . . . plainly violates the requirements of 8 U.S.C. § 1357(a)(2) and 8 C.F.R. § 287.8[(c)]." (ECF No. 1 at 6.). Nothing in the record indicates that Matute-Barahona received any such determination, let alone from a neutral decisionmaker. Thus, that Respondents have violated their own regulations is manifestly clear. *See* 8 U.S.C. § 1357(a)(2) (allowing an ICE officer to make warrantless arrests of noncitizens "*if he has reason to believe* that the alien so arrested is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest.") (emphasis added); 8 C.F.R. § 287.8(c)(ii) (ICE officer must obtain arrest warrant "except when the designated immigration officer has reason to believe that the person is likely to escape before a warrant can be obtained."). "[C]ourts across the country routinely hold that (1) ICE

violating its own regulations in detaining an individual is a due process violation, and (2) this violation makes the detention unlawful and the proper remedy is release." *Izquierdo Navarro v. Bondi*, 2026 WL 468582, at *3 (D. Colo. Feb. 18, 2026) (collecting cases). The Court makes that same conclusion here.

And even though Respondents have attached the administrative warrant to their Response, they have failed to provide any argument explaining how the administrative warrant complies with the Fifth Amendment or the relevant statutes and regulations. Indeed, "[f]or purposes of this specific case, Respondents are not submitting a brief in opposition to the Petition detailing the facts and circumstances of this case." (ECF No. 10 at 1–2.) Respondents even concede "that the issues in this case are not materially different from those resolved by the Tenth Circuit in *Santillan Quiroz*." (*Id.* at 2.)

In sum, "[t]he Government has offered neither a justification nor a formal process for the deprivation of Petitioner's protected liberty interest." *Sosa v. De Anda-Ybarra*, 2026 WL 1453999, at *2 (D.N.M. May 22, 2026). Together, these wrongs constitute violations of Matute-Barahona's substantive and procedural due process rights.

**B. Remedy**

Respondents submit that the "appropriate relief would be an Order directing that Respondents, within seven days of this Court's Order, provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) or else release Petitioner." (ECF No. 10 at 2.)

In the Court's view, a bond hearing will not serve as adequate relief for this Petitioner. This Court has already written of its "concern[] that the immigration courts are not affording immigrants fair bond hearings," as "the mounting evidence that bond determination hearings conducted in Immigration Court under § 1226(a) have

preordained outcomes has become impossible to ignore." *Pal v. Lyons,* 2026 WL 937962, at *4 (D. Colo. Apr. 7, 2026); *see also Quiroz Zacarias v. Mullin,* 2026 WL 1092162, at *4–*5 (D. Colo. Apr. 22, 2026) (concluding "the IJ deprived [petitioner] of his due process rights" by issuing a bond decision that was "wholly bereft of any analysis whatsoever"). Indeed, courts across the country have, with increasing frequency, ceased "order[ing] even initial bond hearings in cases like this one involving unlawful detention under § 1225(b) because Respondents' conduct can no longer be attributed to mere negligence or ineptitude, . . . and doing so would effectively allow the Government to transform an unlawful detention into a lawful one through *post-hoc* justifications." *Zheng v. Rokosky,* 826 F. Supp. 3d 545, 563 (D.N.J. 2026) (collecting cases).

Given this reality, the Court will order Matute-Barahona's immediate release.

## IV. CONCLUSION

For all these reasons, the Court ORDERS as follows:

1. The Minute Order to Show Cause entered by Magistrate Judge Susan Prose (ECF No. 4) is MADE ABSOLUTE and Matute-Barahona's Petition (ECF No. 1) is GRANTED;

2. The Court GRANTS this relief to Matute-Barahona pursuant to Count II of the Petition. The Court does not reach the merits of Count I;

3. **By no later than this Saturday, September 19, 2026**, Respondents shall IMMEDIATELY RELEASE Matute-Barahona on his own recognizance, along with all his personal belongings, and they shall facilitate Matute-Barahona's transportation from the detention facility by providing all necessary identity and travel documents to return to his

primary address;

4. **No onerous conditions of release shall be unilaterally imposed by Respondents on Matute-Barahona**, including without limitation mandating that he wear GPS monitoring, submit to mandatory reporting, or have his movements otherwise restricted;

5. Respondents are ENJOINED from re-arresting or re-detaining Matute-Barahona unless they demonstrate, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that he is a flight risk or danger to the community such that his physical custody is legally justified. At any such bond hearing, Respondents shall bear the burden of proof, and Matute-Barahona shall be allowed to have counsel present. This injunction shall remain in effect until such time as this Court, or the Tenth Circuit Court of Appeals, vacates this Order;

6. Respondents shall continue to be ENJOINED from removing, transferring, or causing the removal or transfer of, Matute-Barahona from the District of Colorado until such time as this Court, or the Tenth Circuit Court of Appeals, vacates this Order;

7. Should Matute-Barahona believe he has a good faith basis to seek attorney's fees pursuant to the Equal Access to Justice Act, he is GRANTED leave to file a motion seeking the same, along with all supporting documentation, by no later than **October 15, 2026**. Respondents shall file a response by no later than **November 5, 2026**, and Matute-Barahona shall file a reply by no later than **November 19, 2026**; and

8. Judgment shall enter in Matute-Barahona’s favor and against Respondents on **October 1, 2026,** UNLESS prior thereto the Court is informed that

Respondents have failed to fully and timely comply with the terms of this Order.

Dated this 17th day of September, 2026.

BY THE COURT:

William J. Martinez
Senior United States District Judge